Payam Khodadadi (SBN 239906)
McGuireWoods LLP
1800 Century Park East, 8th Floor
Los Angeles, CA 90067-1501
Telephone:   310.315.8208
Facsimile:    310.315.8210
Email: pkhodadadi@mcguirewoods.com

Joseph A. Florczak (admitted *pro hac vice*)
McGuireWoods LLP
77 W. Wacker Drive, Suite 4100
Chicago, IL 60601
Telephone:   312.849.8100
Facscimile:   312.849.3690
Email:  jflorczak@mcguirewoods.com

*Counsel for Navient Solutions, LLC
and Navient Credit Finance Corporation*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE:  OSCAR D. TERAN, Debtor** | Bankruptcy No. 10-31718<br>Chapter 7 |
| **OSCAR D. TERAN, on behalf of himself and all those similarly situated,**<br><br>    **Plaintiffs,**<br><br>v.<br><br>**NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION,**<br><br>    **Defendants.** | Adversary No. 20-03075<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**<br><br>Date:        December 3, 2021<br>Time:       9:30 a.m.<br>Location:  Telephonic Appearance<br>               Courtroom 17<br>               150 Golden Gate Avenue<br>               16th Floor<br>               San Francisco, CA 94102 |

# TABLE OF CONTENTS

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................1
I. PRELIMINARY STATEMENT .........................................................................................1
II. PROCEDURAL HISTORY ................................................................................................2
III. STATEMENT OF FACTS...................................................................................................3
    A. The LAWLOANS Program ....................................................................................3
    B. Promissory Note......................................................................................................3
    C. UC Hastings ............................................................................................................4
IV. STANDARD OF REVIEW .................................................................................................4
V. ARGUMENT .......................................................................................................................5
    A. Bankruptcy Code Section 523(a)(8) Exempts Certain Educational Loans From Discharge in Bankruptcy ...........................................................................5
    B. Section 523(a)(8)(A)(i) Excepts from Discharge Educational Loans Made As Part of a Program Wholly or Partially Funded by a Governmental Unit or Nonprofit Entity ................................................................................................6
    C. Plaintiff's Bar Study Loan is Excepted from Discharge Under § 523(a)(8)(A)(i) ....................................................................................................8
    D. Plaintiff Teran's Bar Study Loan is a Qualified Education Loan Excepted from Discharge Under Section 523(a)(8)(B)..........................................................9
VI. CONCLUSION ..................................................................................................................11

# TABLE OF AUTHORITIES

**Cases**                                                           **Page(s)**

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986) ........................................................................................................ 10

*In re Beesley*,
    No. 12–2444–CMB, 2013 WL 5134404 (Bankr. W.D. Pa. Sept. 13, 2013) ....................... 10

*Bolen*, 287 B.R. at 128-29 ...................................................................................................... 12

*Busson-Sokolik v. Milwaukee Sch. of Eng'g (In re Busson-Sokolik)*,
    635 F.3d 261 (7th Cir. 2011) ....................................................................................... 12, 14

*In re Carow*,
    No. 10–7011, 2011 WL 802847 (Bankr. D.N.D. Mar. 2, 2011) ......................................... 10

*Cleveland v. Educ. Credit Mgmt. Corp. (ECMC) (In re Cleveland)*,
    559 B.R. 265 (Bankr. N.D. Ga. 2016) ................................................................................ 12

*In re Corbin*,
    506 B.R. 287 (Bankr. W.D. Wash. 2014) .......................................................................... 10

*Decker v. EduCap, Inc.*,
    476 B.R. 463 (W.D. Pa. 2012) ........................................................................................... 12

*Drumm v. New England Loan Marketing Assoc. (In re Drumm)*,
    329 B.R. 23 (Bankr. W.D. Pa. 2005) .................................................................................. 12

*In re Duits*,
    No. 14-05277-RLM-13, 2020 WL 256770 (Bankr. S.D. Ind. Jan. 15, 2020) ..................... 12

*In re Francis*,
    385 B.R. 800 (B.A.P. 10th Cir. 2008) ................................................................................ 14

*Gorosh v. Posner (In re Posner)*,
    434 B.R. 800 (Bankr. E.D. Mich. 2010) ............................................................................ 15

*Greer-Allen v. Nat'l Collegiate Student Loan Tr.*
    *2005-1 (In re Greer-Allen)*, 602 B.R. 831 (Bankr. D. Mass. 2019) .................................... 11

*In re Hammarstrom*,
    95 B.R. 160 (Bankr. N.D. Cal. 1989) ................................................................................. 12

*Jean-Baptiste v. Educ. Credit Mgmt. Corp. (In re Jean-Baptiste)*,
    584 B.R. 574 (Bankr. E.D.N.Y. 2018) ......................................................................... 12, 15

*In re Maas*,
     497 B.R. 863 (Bankr. W.D. Mich. 2013) .................................................................. 12, 15

*In re Mayacamas Holdings LLC*,
     No. AP 19-03012-DM, 2020 WL 9211191 (Bankr. N.D. Cal. Nov. 2, 2020) ...................... 10

*Medina v. Nat'l Collegiate Student Loan Tr. 2*,
     No. 17-05276-LT7, 2020 WL 5552687 (Bankr. S.D. Cal. Aug. 4, 2020) ............................ 11

*In re Moon*,
     610 B.R. 616 (Bankr. E.D. Wis. 2019) ................................................................................ 13

*In re Murphy*,
     282 F.3d 868 (5th Cir. 2002) ........................................................................................ 12, 14

*O'Brien v. First Marblehead Educ. Resources, Inc. (In re O'Brien)*,
     419 F.3d 104 (2d Cir. 2005) ......................................................................................... 11, 12

*Page v. JP Morgan Chase Bank*,
     592 B.R. 334 (B.A.P. 8th Cir. 2018) .................................................................................. 14

*In re Pilcher*,
     149 B.R. 595 (B.A.P. 9th Cir. 1993) ....................................................................... 11, 12, 13

*In re Renshaw*,
     222 F.3d 82 (2d Cir. 2000) ................................................................................................. 10

*In re Rumer*,
     469 B.R. 553 (Bankr. M.D. Pa. 2012) ................................................................................ 12

*In re Rust*,
     510 B.R. 562 (Bankr. E.D. Ky. 2014) ................................................................................ 15

*Scott v. Harris*,
     550 U.S. 372 (2007) ........................................................................................................... 10

*Sears v. EduCap, Inc.*,
     393 B.R. 678 (Bankr. W.D. Mo. 2008) .............................................................................. 12

*Simo v. Union of Needletrades, Indus. & Textile Employees*,
     322 F.3d 602 (9th Cir. 2003) .............................................................................................. 10

*Univ. v. Merchant (In re Merchant)*,
     958 F.2d 738 (6th Cir. 1992) .............................................................................................. 11

**Statutes**

11 U.S.C. § 523(a)(8) ................................................................................................... *passim*

11 U.S.C. § 523(a)(8)(A)(i) ............................................................................... 11, 12, 13, 14

11 U.S.C. § 523(a)(8)(B) ................................................................................................7, 11, 14, 15

20 U.S.C. § 1087ll ..........................................................................................................................14

26 U.S.C. § 22l (d)(l) .....................................................................................................................11

26 U.S.C. § 221(d)(2) .....................................................................................................................14

BAPCPA amendments ...................................................................................................................10

Internal Revenue Code § 221(d)(1) ...............................................................................................14

**Other Authorities**

Fed. R. Civ. P. 56 ...........................................................................................................................10

Kyle L. Grant, *Student Loans in Bankruptcy and the "Undue Hardship" Exception: Who Should Foot the Bill?* ..................................................................................................10

# MEMORANDUM OF POINTS AND AUTHORITIES

Defendants Navient Solutions, LLC and Navient Credit Finance Corporation (together, "Defendants"), through the undersigned counsel, hereby submit this memorandum of points and authorities in support of Defendants' *Motion for Summary Judgment* (the "Motion") regarding the adversary proceeding Complaint filed by plaintiff Oscar Teran ("Plaintiff"), (Dkt. No. 1). In support, Defendants state as follows:

## I. PRELIMINARY STATEMENT

In this adversary proceeding, Plaintiff seeks (a) a determination that his LAWLOANS Bar Study loan was discharged in bankruptcy, (b) sanctions against Defendants for purported violations of the bankruptcy discharge injunction relating to such loan, and (c) sanctions against Defendants for allegedly inaccurate credit reporting stemming from this purported discharge. *See* Complaint at 15-18. Plaintiff also seeks to represent a purported class seeking similar relief. The lynchpin of all these allegations is the presumption that Plaintiff's Bar Study loan was, in fact, discharged in bankruptcy.

Yet, as indisputable facts show, Plaintiff's Bar Study loan was not discharged in bankruptcy. Among other categories of debt, the Bankruptcy Code excepts from discharge (a) educational loans made under any program funded in whole or in part by a governmental unit or nonprofit institution and (b) educational loans that are for the cost of attendance at an eligible educational institution. 11 U.S.C. § 523(a)(8). Plaintiff's Bar Study loan is excepted from discharge under both of these criteria.

Plaintiff's Bar Study loan was made under the LAWLOANS program. The LAWLOANS Program operated as an umbrella program that issued both federally-guaranteed student loans and private loans for the educational expenses of graduate law students. The LAWLOANS program also integrated the involvement of non-profit organizations in the administration of the program. These facts are easily sufficient under the applicable legal standards to qualify the LAWLOANS program as a "program funded in whole or in part by a governmental unit or nonprofit institution."

Likewise, Plaintiff's Bar Study loan was an educational loan made for qualifying educational expenses. The plain terms of the Plaintiff's Bar Study loan promissory note reflect that

it was made for bar exam study expenses and living expenses, and that the proceeds of the loan were to be used only for educational expenses reasonably attributable to Plaintiff's attendance at UC Hastings College of Law. And Plaintiff's Bar Study loan promissory note contains a certification by a financial aid administrator at UC Hastings that the total certified amount of the loan was less than the cost of attendance at UC Hastings, less other financial aid. Such characteristics likewise render Plaintiff's Bar Study loan excepted from discharge under Section 523(a)(8)(B) of the Bankruptcy Code.

As Plaintiff's LAWLOANS Bar Study loan falls squarely within at least two of the discharge exceptions in Section 523(a)(8) of the Bankruptcy Code, the loan is not discharged in bankruptcy absent a finding of undue hardship. No such finding exists or is sought in this case. Accordingly, Defendants are entitled to a determination that Plaintiff's LAWLOANS Bar Study loan is not discharged in bankruptcy, and the Court should dismiss the allegations in the Complaint with prejudice.

## II.     PROCEDURAL HISTORY

In May 2010, Plaintiff sought relief under Title 11 in this Court in Case No. 10- 31718, *In re Oscar D. Teran*. Complaint ¶ 26. The Court entered a discharge order in this case on August 17, 2010. *See* Compl. ¶ 30. On August 31, 2020, ten years later, Plaintiff filed the instant adversary proceeding. *See* Compl. Defendants answered the Complaint on October 30, 2020. *See* Dkt. No. 14. On January 29, 2021, Defendants filed their Motion to Dismiss Count Three of the Complaint or, in the Alternative, Compel Arbitration [Dkt. Nos. 20-21] (the "Dismissal Motion"). On March 26, 2021, the Court held a hearing regarding the Dismissal Motion. At the hearing, the Court indicated its desire to evaluate whether Plaintiff's Bar Study loan was dischargeable in bankruptcy before rendering a decision on the Dismissal Motion. The Court requested the parties confer on a summary judgment briefing schedule.

On April 22, 2021, counsel to Plaintiff and Defendants filed a joint status report with the Court [Dkt. No. 31] setting forth a discovery, briefing, and hearing schedule. The Court approved this schedule at a hearing on April 23, 2021. Pursuant to such approved schedule, the parties stipulated that Defendants would file a motion for summary judgment regarding the

dischargeability of Plaintiff's loan under 11 U.S.C. § 523(a)(8). Following this filing, Plaintiff would have an additional discovery period, with any opposition to the Motion due on November 5, 2021. The Motion has been set for a hearing on December 3, 2021.

### III. STATEMENT OF FACTS

#### A. The LAWLOANS Program

The LAWLOANS Program was a student loan program administered in part by Sallie Mae that was designed to provide graduate law students with a comprehensive, affordable source of funds designed to meet all of their education financing needs. *See* Ex. B to Stephanie Box Declaration at 5. The program packaged federally guaranteed Stafford and Graduate PLUS loans with private loans, including Bar Study loans, to offer a one-stop source of education funding. *See id*. This structure was in place at the time Plaintiff's Bar Study loan was originated in 2008. *See id*. The LAWLOANS Quick Reference Guide for academic year 2007-08 specifically cautioned that LAWLOANS private loans were not dischargeable in bankruptcy. *See id.* at 43.

The LAWLOANS program has issued both private loans and federally guaranteed loans since its inception in 1989. *See* Ex. C to Box Decl. at 1–5. Further, the LAWLOANS program has also incorporated non-profit entities in administration of the program, to include the Higher Education Assistance Foundation, a Minnesota nonprofit corporation, and Northstar Guarantee Inc., a Minnesota nonprofit corporation. *See id*. at 1; Ex. D to Box Decl. at 1; Ex. E to Box Decl. at 1; Ex. F to Box Decl. at 1; and Ex. G to Box Decl. at 1.

#### B. Promissory Note

Plaintiff executed the promissory note for his LAWLOANS Bar Study loan on or about February 5, 2008. *See* Ex. A to Box Decl. at 1. The Promissory Note requested $15,000, allocating $4,000 for "bar review course fees, deposits, etc." and the remainder for living expenses while studying for the bar exam. *See id.*

Section D of the promissory note relates to school certification of the loan amount and specifies that it must be completed by an authorized school official. *Id.* at 1. The section is signed by Sara Ulteri-Butler / F.A.A. and contains the following certification in relevant part: "I hereby certify that the student named in Section A is enrolled and is in good standing and making

satisfactory progress toward graduation from this school on or about the date specified. I also certify that this Borrower has not been approved to receive funds for bar examination expenses from another provider of educational loans . . . . As an authorized representative of the school identified above, I hereby certify the following: (i) the borrower is eligible for a LAWLOANS Bar Study Loan; (ii) the information completed in this school certification is accurate; (iii) the Total Certified Amount does not exceed the student's cost of attendance minus other financial aid; [and] (iv) that school will notify Sallie Mae if the borrower withdraws from the school[.]" *Id*. at 1.

Section O. 1 contains the following: "Amount Lent – You have the right to lend an amount less than the Loan Amount Requested if the School certifies a lower cost of attendance." *Id*. at 6. Section M.6 of the Promissory Note provides that "This loan may not be dischargeable in bankruptcy." *Id*. at 4.

Section P. 1 of the Promissory Note contains the following: "Certification – I certify that the information contained in Sections A, B, and C of the application is true, complete and correct to the best of my knowledge and belief and is made in good faith, that I am eligible for this loan and that I will repay it according to the terms of this note . . . . I understand that I must immediately repay any funds that cannot reasonably be attributed to meeting the educational expenses of the student borrower related to attendance at the school[.]" *Id*. at 6.

### C. UC Hastings

During the 2007-2008 academic year, as part of its Academic Support Program, UC Hastings offered a bar review practicum course called "O! The Bar!" staffed by the school with a Legal Education Consultant and certain "Attorney Readers." This program was included in budget presentations for UC Hasting's Academic Support Program. *See* Ex. A to Florczak Decl. at 1, 3-4.

As part of its third-party subpoena responses, UC Hastings confirmed that Ms. Sara Viteri-Butler was a financial aid administrator employed by UC Hastings. *See* Ex. B to Joseph Florczak Declaration. She left her employment at UC Hastings in 2012. *Id.*

## IV. STANDARD OF REVIEW

On a motion for summary judgment, the court must determine whether, viewing the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material

fact. *Simo v. Union of Needletrades, Indus. & Textile Employees*, 322 F.3d 602, 609-10 (9th Cir. 2003); Fed. R. Civ. P. 56. Summary judgment against a party is appropriate when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *In re Mayacamas Holdings LLC*, No. AP 19-03012-DM, 2020 WL 9211191, at *2 (Bankr. N.D. Cal. Nov. 2, 2020). A "genuine" dispute requires the nonmovant to adduce "sufficient evidence" in its "favor[] … for a jury to return a verdict for that party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). On summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

## V. ARGUMENT

### A. Bankruptcy Code Section 523(a)(8) Exempts Certain Educational Loans From Discharge in Bankruptcy

To ensure "that students [could not] take advantage of the bankruptcy system by incurring large amounts of student debt [and] obtain a discharge of the debt on the eve of lucrative careers," Congress added Section 523(a)(8) to the Bankruptcy Code in the late 1970s to exempt student-loan debt from discharge in bankruptcy (unless doing so would cause the debtor undue hardship). *See* Kyle L. Grant, *Student Loans in Bankruptcy and the "Undue Hardship" Exception: Who Should Foot the Bill?*, 2011 Brigham Young U. L. Rev. 819, 825 (2011); *see also In re Renshaw*, 222 F.3d 82, 86–87 (2d Cir. 2000). Since then, Congress's every action on the subject has been to comprehensively expand the scope of *non-dischargeability* of student loans—most recently in 2005 as part of the BAPCPA amendments. *Renshaw*, 222 F.3d at 87–88; *see also, e.g.*, *In re Corbin*, 506 B.R. 287, 296–98 (Bankr. W.D. Wash. 2014); *In re Beesley*, No. 12–2444–CMB, 2013 WL 5134404, *4 (Bankr. W.D. Pa. Sept. 13, 2013) (collecting authorities); *In re Carow*, No. 10–7011, 2011 WL 802847, *4–5 (Bankr. D.N.D. Mar. 2, 2011) (noting that "Congress has expanded the scope of § 523(a)(8) through successive amendments").

The following educational debts are now exempt from discharge under § 523(a)(8):

- "An educational benefit overpayment or loan made, insured or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution[,]" 11 U.S.C. § 523(a)(8)(A)(i);

- "[O]bligation[s] to repay funds received as an educational benefit, scholarship or stipend[,]" *id.* § 523(a)(8)(A)(ii); and

- "[Q]ualified educational loan[s]" as defined in 26 U.S.C. § 22l (d)(l), *id.* § 523(a)(8)(B).

### B. Section 523(a)(8)(A)(i) Excepts from Discharge Educational Loans Made As Part of a Program Wholly or Partially Funded by a Governmental Unit or Nonprofit Entity

The first subsection, Section 523(a)(8)(A)(i), concerns not only *particular loans* individually made or guaranteed by a governmental unit, but also *loan programs* wholly or partially funded by a governmental unit or nonprofit, even if the particular loan at issue was not individually funded in whole or in part by a governmental unit or nonprofit.

> "[T]he plain language of § 523(a)(8) indicates that it is the *program* that need be funded by a nonprofit institution. Section 523(a)(8) does not define "program," but the use of the modifier "any" suggests a broad definition. Congress did not use language indicating that the loan itself must be funded by a nonprofit institution, but that the program pursuant to which the loan was made be funded in part by a nonprofit institution. . . . Nothing in the legislative history surrounding this section evidences an intent to limit it solely to the funding of the loan itself. . . . The Law Access program, through which Pilcher applied and received her loan . . . did indeed receive nonprofit funding by the participation of nonprofit entities. We hold that the loan that Pilcher received was procured through the integrated services of the Law Access program, some of the participants of which are nonprofit institutions.

*In re Pilcher*, 149 B.R. 595, 598–99 (B.A.P. 9th Cir. 1993) (emphasis in original).

"Defendant's position is supported by numerous cases which have held that student loans made by private for-profit banks were nondischargeable under § 523(a)(8) if they were made through a student loan program guaranteed, in whole or in part, by a nonprofit institution." *Medina v. Nat'l Collegiate Student Loan Tr. 2*, No. 17-05276-LT7, 2020 WL 5552687, at *3 (Bankr. S.D. Cal. Aug. 4, 2020); *see also O'Brien v. First Marblehead Educ. Resources, Inc. (In re O'Brien)*, 419 F.3d 104, 107 (2d Cir. 2005); *Univ. v. Merchant (In re Merchant)*, 958 F.2d 738, 740 (6th Cir. 1992); *Greer-Allen v. Nat'l Collegiate Student Loan Tr. 2005-1 (In re Greer-Allen)*, 602 B.R. 831,

837 (Bankr. D. Mass. 2019); *Cleveland v. Educ. Credit Mgmt. Corp. (ECMC) (In re Cleveland)*, 559 B.R. 265, 271 (Bankr. N.D. Ga. 2016); *Decker v. EduCap, Inc.*, 476 B.R. 463, 467-468 (W.D. Pa. 2012); *Drumm v. New England Loan Marketing Assoc., (In re Drumm)*, 329 B.R. 23, 35 (Bankr. W.D. Pa. 2005); *In re Hammarstrom*, 95 B.R. 160, 165 (Bankr. N.D. Cal. 1989); *In re Duits*, No. 14-05277-RLM-13, 2020 WL 256770, *2 (Bankr. S.D. Ind. Jan. 15, 2020).

The Bankruptcy Code does not define "program." Cases interpreting this term, however, clarify that it has a broad, lender-driven definition. *See, e.g.*, *Pilcher*, 149 B.R. at 598. That is, courts look at the species of loan issued by the lender to determine the boundaries of a loan program. For example, in *Pilcher*, *O'Brien*, and *Bolen*, the courts analyzed the nonprofit funding of the "Law Access Program," as documented by the promissory note that the borrower submitted to obtain his loan. *Id.* at 598–99; *see also O'Brien*, 419 F.3d at 106–07; *Bolen*, 287 B.R. at 128–29; *see also, e.g.*, *Sears v. EduCap, Inc.*, 393 B.R. 678, 679–80 (Bankr. W.D. Mo. 2008) (conducting this analysis as to the Loan to Learn Program).

The nature of the loan as "educational" within the meaning of the statute is likewise determined by examination of the terms of the loan in the promissory note. The "*stated purpose and not the actual use of the loan determines whether a loan is an 'educational loan' excepted from discharge under § 523(a)(8).*" *Jean-Baptiste v. Educ. Credit Mgmt. Corp.* (*In re Jean-Baptiste*), 584 B.R. 574, 584–85 (Bankr. E.D.N.Y. 2018) (emphasis added); *see also, e.g.*, *In re Murphy*, 282 F.3d 868, 873 (5th Cir. 2002); *In re Maas*, 497 B.R. 863, 869–71 (Bankr. W.D. Mich. 2013) (collecting authorities); *In re Rumer*, 469 B.R. 553, 562 (Bankr. M.D. Pa. 2012) (the same). In other words, courts examine "whether the lender's agreement with the borrower was predicated on the borrower being a student who needed financial support to get through school." *See Busson-Sokolik v. Milwaukee Sch. of Eng'g* (*In re Busson-Sokolik*), 635 F.3d 261, 266–67 (7th Cir. 2011).

No requirement exists under Section 523(a)(8)(A)(i) that an "educational loan" be a "qualified education loan":

> [S]ubsection (8)(A)(i) does not incorporate the IRC term "qualified education loan." . . . Unlike subsection (8)(B), subsection (8)(A)(i) simply requires that the debt at issue arise from a loan that is educational in nature; it need not comply with the IRC definition of

"qualified education loan."

*In re Moon*, 610 B.R. 616, 23-24 (Bankr. E.D. Wis. 2019).

**C. Plaintiff's Bar Study Loan is Excepted from Discharge Under § 523(a)(8)(A)(i)**

Under these standards, Plaintiff's LAWLOANS Bar Study loan is an educational loan excepted from discharge under § 523(a)(8)(A)(i). The LAWLOANS Bar Study loan is undisputably an educational loan. Under the terms of the promissory note, the loan proceeds were allocated between bar study review expenses and living expenses while studying for the bar exam. *See* Ex. A. to Box Decl. at 1. The loan is expressly conditioned on the use of funds being "reasonably attributable to the educational expenses of the student borrower related to attendance at the school." The school certification on the loan (a) verifies that the student has not received bar exam funds from other student loan lenders, (b) certifies that the total amount certified by the school does not exceed the school's cost of attendance minus other financial aid received by the borrower, and (c) requires the school to notify the lender if the student withdraws from the school. *See* Ex. A. to Box Decl. at 1. In sum, Plaintiff's Bar Study loan is expressly conditioned on attendance at UC Hastings and the use of the funds for educational purposes in pursuit of the bar exam.

Further, both (a) the formation documents of the LAWLOANS Program and (b) descriptions of the LAWLOANS Program contemporaneous to the origination of Plaintiff's Bar Study loan plainly establish that the LAWLOANS Program was a "program funded in whole or in part by a governmental unit or nonprofit institution" as specified in § 523(a)(8)(A)(i). First, the terms of the "LAWLOANS Multiparty Agreement" establishing the program in 1989 reflect the involvement of non-profit entities in the administration of the program from the outset. Indeed, the parties to the "LAWLOANS Multiparty Agreement" appear substantially similar to the parties to the "Law Plan Multiparty Agreement" that established the "Law Access Program" analyzed in *Pilcher*. In *Pilcher*, the 9th Circuit B.A.P determined that the involvement of non-profit entities in administration of the loan program, no matter how slight, brought the program within § 523(a)(8)(A)(i). *Compare* Box Decl. Ex. C *with Pilcher*, 149 B.R. at 599. The LAWLOANS Multiparty Agreement likewise established that, from the beginning, the LAWLOANS program

offered both federally guaranteed loans and private loans to graduate law students. Such federally guaranteed loans under the LAWLOANS program offer an independent source of funding from a "governmental unit" within the meaning of § 523(a)(8)(A)(i). Descriptions of the LAWLOANS Program contemporaneous to Plaintiff's Bar Study loan likewise confirm that the LAWLOANS Program issued both federally guaranteed loans and private loans. *See* Box Decl. Ex. B at 5.

In sum, Plaintiff's Bar Study loan is an educational loan made as part of a program funded by non-profit and/or governmental units, and is therefore exempt from discharge in bankruptcy under § 523(a)(8)(A)(i) absent a showing of undue hardship, which the Plaintiff does not allege here.

### D. Plaintiff Teran's Bar Study Loan is a Qualified Education Loan Excepted from Discharge Under Section 523(a)(8)(B)

Section 523(a)(8)(B) excepts from discharge "[any] educational loan that is a qualified education loan, as defined in section 221(d)(1) of the Internal Revenue Code of 1986." 26 U.S.C. § 221(d)(1) in turn defines a "qualified education loan" as any loan used to pay "qualified higher education expenses," which, in turn, are defined as the "cost of attendance . . . at an eligible educational institution." 26 U.S.C. § 221(d)(2). 20 U.S.C. § 1087ll defines "cost of attendance" as tuition and certain other expenses, including room and board, "as determined by the institution." Therefore, the applicable institution determines the cost of attendance for purposes of Section 523(a)(8)(B).

A majority of courts consider a debtor's purpose in incurring an obligation, and the character of the loans at the time they were made, to be determinative under Section 523. *Sokolik v. Milwaukee School of Eng'g*, 635 F.3d 261, 266 (7th Cir. 2011) (looking to the purpose of the loan rather than how the funds were used); *Murphy v. Penn. Higher Educ. Assistance Agency*, 282 F.3d 868, 870 (5th Cir. 2002) (citing cases and concluding that "it is the purpose, not the use, of the loan that controls" the dischargeability determination under § 523(a)(8)); *Page v. JP Morgan Chase Bank*, 592 B.R. 334, 336 (B.A.P. 8th Cir. 2018) ("Rather than focus on a loan's features, courts routinely look to the purpose of a loan to determine whether it is 'educational'" under § 523(a)(8)); *In re Francis*, 385 B.R. 800 (B.A.P. 10th Cir. 2008) (table decision) ("[T]he

applicability of § 523(a)(8) hinges upon the character of the [l]oans at the time they were made[.]");
*In re Jean-Baptiste*, 584 B.R. at 585 ("Courts have held that the stated purpose and not the actual use of the loan determines whether a loan is an 'educational loan' excepted from discharge under § 523(a)(8)."); *In re Rust*, 510 B.R. 562, 567 (Bankr. E.D. Ky. 2014) ("[A] majority of courts determine whether a loan qualifies as an 'educational benefit' by focusing on *the stated purpose for the loan when it was obtained*, rather than on how the loan proceeds were actually used.") (emphasis in original); *In re Maas*, 497 B.R. at 869 (same); *Gorosh v. Posner (In re Posner)*, 434 B.R. 800, 803 (Bankr. E.D. Mich. 2010) ("a majority of courts . . . determine[] the educational nature of the loan by focusing on the substance of the transaction which resulted in the obligation. The 'substance of the transaction test' reflects recognition of the Congressional purpose of § 523(a)(8), namely to insure the availability of educational financing.").

Here, Plaintiff's Bar Study loan also satisfies the criteria of a "qualified education loan" under Section 523(a)(8)(B), likewise exempting the loan from discharge in bankruptcy. As set forth above, the terms of the Promissory Note establish that Plaintiff's Bar Study loan is educational in nature. And the Promissory Note reflects that the amounts funded are for "costs of attendance" at an "eligible institution." Indeed, the promissory note specifies that the funds were to be used for a bar study course – such as the one offered by UC Hastings in 2008 – and living expenses (such as room and board). *See* Ex. A to Florczak Decl. at 1, 3-4, Ex. A. to Box Decl. at 1. And a financial aid officer at UC Hastings expressly certified that "the Total Certified Amount does not exceed the student's cost of attendance minus other financial aid." Ex. A to Box Decl. at 1. These school certifications confirm the intended use of the loan for qualified education expenses, and accordingly the loan is likewise excepted from discharge pursuant to Section 523(a)(8)(B).

## VI. CONCLUSION

WHEREFORE, for the reasons stated above, Defendants ask the Court to (a) grant this motion; (b) enter a judgment that Plaintiff's Bar Study loan is excepted from discharge absent a showing of undue hardship; (c) dismiss the remainder of Plaintiff's complaint as moot, and (d) grant such other relief as is just and proper under the circumstances.

|     |                        |                                                                 |
|-----|------------------------|-----------------------------------------------------------------|
| 1   |                        | Respectfully submitted,                                         |
| 2   |                        | /s/ Payam Khodadadi                                             |
| 3   | Dated: July 30, 2021   | Payam Khodadadi (SBN 239906)                                    |
|     |                        | McGuireWoods LLP                                                |
| 4   |                        | 1800 Century Park East, 8th Floor                               |
|     |                        | Los Angeles, CA 90067-1501                                      |
| 5   |                        | Telephone:   310.315.8208                                       |
|     |                        | Facsimile:   310.315.8210                                       |
| 6   |                        | Email: pkhodadadi@mcguirewoods.com                              |
| 7   |                        | Joseph A. Florczak (admitted *pro hac vice*)                    |
|     |                        | McGuireWoods LLP                                                |
| 8   |                        | 77 W. Wacker Drive, Suite 4100                                  |
|     |                        | Chicago, IL 60601                                               |
| 9   |                        | Telephone:   312.849.8100                                       |
|     |                        | Facscimile:  312.849.3690                                       |
| 10  |                        | Email:  jflorczak@mcguirewoods.com                              |
| 11  |                        | *Counsel for Navient Solutions, LLC*                            |
|     |                        | *and Navient Credit Finance Corporation*                        |

# CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2021, I electronically transmitted the foregoing document entitled **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** to the Clerk's Office of the United States Bankruptcy Court, Northern District of California, using the Court's CM/ECF System for filing and service via transmittal of a Notice of Electronic Filing email from the Court to the registered email addresses of the interested parties in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on July 30, 2021 at Los Angeles, California.

By:    /s/ Payam Khodadadi
           Payam Khodadadi