1
James A. Michel (SBN 184730)
THE LAW OFFICE OF JAMES MICHEL
2912 Diamond St. #373
San Francisco, CA 94131-3208
Tel:    (415) 239-4949
attyjmichel@gmail.com

Erika Angelos Heath (SBN 304683)
FRANCIS MAILMAN SOUMILAS, P.C.
369 Pine Street, Suite 410
San Francisco, CA  94104
Tel:    (628) 246-1352
Fax:    (215) 940-8000
eheath@consumerlawfirm.com

Attorneys for Plaintiff and the Classes

*Additional attorneys on signature page*

# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN FRANCISCO DIVISION

| | |
|---|---|
| **IN RE: OSCAR D. TERAN, Debtor** | Bankruptcy No. 10-31718 DM<br>Chapter 7 |
| **OSCAR D. TERAN, on behalf of himself and all those similarly situated,** | Adversary No. 20-03075 |
| **Plaintiffs,** | **REDACTED VERSION OF:**<br>**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT** |
| **v.** | |
| **NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION,** | Date:       Dec. 3, 2021<br>Time:       9:30 a.m.<br>Location:   Virtual |
| **Defendants.** | Hon. Dennis Montali |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

I.     INTRODUCTION ............................................................................................... 1

II.    FACTUAL BACKGROUND AND PROCEDURAL POSTURE ........................................ 3

III.   LEGAL STANDARD ........................................................................................... 5

IV.    ARGUMENT ...................................................................................................... 7

   A.   Mr. Teran's Bar Study Loan Was Not a "Qualified Educational Loan" ....................... 7

   B.   Mr. Teran's Bar Study Loan Was Not Made Under A Program Funded in Whole or in Part by the Government or a Nonprofit ............................................................ 9

      1.   Early LAWLOANS Documents From the 1980's and 1990's Do Not Establish a Covered Program in 2008 ............................................................... 11

      2.   Navient Cannot Prove the Federal Government Funds Any Part of the LAWLOANS Program, as Federal Programs are Distinct Programs Defined by Statute. ........................... 13

V.     CONCLUSION ................................................................................................. 16

i

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*In re Alibatya,*
    178 B.R. 335 (Bankr. E.D.N.Y. 1995)...................................................................6

*Celotex Corp. v. Catrett,*
    477 U.S. 317 (1986)...................................................................................................5

*Chae v. SLM Corp.,*
    593 F.3d 936 (9th Cir. 2010)....................................................................................15

*In re Chambers,*
    348 F.3d 650 (7th Cir. 2003).....................................................................................6

*Channer v. Pa. Higher Educ. Assistance Agency (In re Channer),*
    833 F. App'x 502 (2d Cir. 2020)..............................................................................15

*In re Christoff,*
    527 B.R. 624 (B.A.P. 9th Cir. 2015)..........................................................................6

*In re Clouser,*
    2016 Bankr. LEXIS 3665 (Bankr. D. Or. Oct. 6, 2016) .....................................10, 15

*Crocker v. Navient Sols., L.L.C. (In re Crocker),*
    941 F.3d 206 (5th Cir. 2019).....................................................................................7

*Daubert v. Merrell Dow Pharmaceuticals, Inc.,*
    43 F.3d 1311 (9th Cir. 1995), cert. denied, 516 U.S. 869,
    116 S. Ct. 189, 133 L. Ed. 2d 126 (1995) .................................................................5

*In re Davis,*
    316 B.R. 610 (Bankr. S.D.N.Y. 2004)........................................................................6

*In re Dudley,*
    502 B.R. 259 (Bankr. W.D. Va. 2013) .......................................................................6

*Hawkins v. Franchise Tax Bd. of Cal.,*
    769 F.3d 662 (9th Cir.2014).......................................................................................6

*Holguin v. Nat'l Collegiate Student Loan Tr.*
    *2006-2 (In re Holguin),* 609 B.R. 878 (Bankr. D.N.M. 2019)....................6, 10, 11

*Homaidan v. Sallie Mae, Inc.,*
    3 F.4th 595 (2d Cir. 2021) ..........................................................................................7

ii

*In re Johnson*,
    222 B.R. 783 (Bankr. E.D. Va. 1998) ...................................................................6

*Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar)*,
    567 B.R. 160 (B.A.P. 9th Cir. 2017) ...................................................................5

*Lewis v. Pa. Higher Educ. Assistance Agency*,
    2018 U.S. App. LEXIS 1873 (6th Cir. Jan. 24, 2018) ......................................15

*McDaniel v. Navient Sols. Inc. (In re McDaniel)*,
    590 B.R. 537 (Bankr. D. Colo. 2018) .................................................................6

*McDaniel v. Navient Sols. LLC (In re McDaniel)*,
    973 F.3d 1083 (10th Cir. 2020) ..........................................................................7

*In re Mehta*,
    310 F.3d 308 (3d Cir. 2002)............................................................................5, 6

*In Re Oscar D. Teran*,
    Case No. 10-31718-DM (N.D. Cal.), ECF 1 ..................................................3, 4

*Page v. JP Morgan Chase Bank (In re Page)*,
    592 B.R. 334 (B.A.P. 8th Cir. 2018)..................................................................10

*Palmer v. Galaxy Int'l Purchasing, LLC (In re Palmer)*,
    2021 Bankr. LEXIS 834 (Bankr. N.D. Ohio Mar. 31, 2021)..............................10

*In re Pilcher*,
    149 B.R. 595 (B.A.P. 9th Cir. 1993)..............................................................11, 13

*In re Renshaw*,
    222 F.3d 82 (2d Cir. 2000)...................................................................................6

*Roth v. Educ. Credit Mgmt. Corp.* (In re Roth),
    490 B.R. 908, 916 (B.A.P. 9th Cir. 2013)  ..........................................................5

*In re Rumer*,
    469 B.R. 553 (M.D. Pa. 2012)..............................................................................6

*Sachan v. Huh (In re Huh)*,
    506 B.R. 257 (9th Cir. BAP 2014)........................................................................6

*Santa Fe Med. Servs. v. Segal (In re Segal)*,
    57 F.3d 342 (3d Cir. 1995)..................................................................................10

*In re Van Ess*,
    186 B.R. 375 (Bankr. D.N.J. 1994) ...............................................................7, 10

iii

*Wiley v. Wells Fargo Bank, N.A. (In re Wiley)*,
   579 B.R. 1 (Bankr. D. Me. 2017) ........................................................................8, 10

**Statutes**

11 U.S.C. § 523(a)(8)(A) ........................................................................................1

11 U.S.C. § 523(a)(8)(A)(i) ...........................................................................*passim*

11 U.S.C. § 523(a)(8)(A)(ii) ...................................................................................7

11 U.S.C. § 523(a)(8)(B) .......................................................................1, 5, 7, 9

20 U.S.C. § 1071(c) ...............................................................................................15

20 U.S.C. § 1078-2 .................................................................................................15

20 U.S.C. § 1078(b) ...............................................................................................13

20 U.S.C. § 1087ll ...............................................................................................1, 8

20 U.S.C. § 1091(a)(1) .............................................................................................8

26 U.S.C. § 25A(b)(3) ..............................................................................................8

26 U.S.C. § 25A(f)(2) ...............................................................................................9

26 U.S.C. § 221(d)(1) .......................................................................................1, 7, 8

26 U.S.C. § 221(d)(1)(C) .........................................................................................8

26 U.S.C. § 221(d)(2) ...............................................................................................9

26 U.S.C. § 221(d)(3) ...............................................................................................8

Bankr. Code § 523(a)(8) ...............................................................................*passim*

Bankruptcy Abuse Prevention and Consumer Protection Act ..................................4

Federal Higher Education Act of 1965 Title IV ...................................................9, 15

Higher Education Act ............................................................................................8, 9

Higher Education Amendments of 1992 ...................................................................9

**Federal Authorities**

Fed. R. Bankr. P. 7056 ............................................................................................5

Case: 20-03075   Doc# 41   Filed: 11/05/21   Entered: 11/05/21 16:38:19   Page 5 of 23

Fed. R. Civ. P. 56(c) .................................................................................................5

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

## I.    **INTRODUCTION**

The pending motion for summary judgment must be denied because Defendants have failed to meet their burden of showing that Plaintiff's private bar study loan (the "Bar Study Loan"), which this Court discharged in a 2010 bankruptcy, was actually non-dischargeable. Defendants contend that the private loan, taken by Plaintiff on February 13, 2008, to fund a private Texas bar exam preparation course, was a "qualified educational loan" and made under a "program" that was "funded" in whole or in part by a governmental unit or non-profit institution. (*See* ECF 35 at 6 (citing the exceptions to discharging certain student loan at section 523(a)(8) of the Bankruptcy Code).) But while Defendants cite to certain dischargeability exceptions, they fail to place *evidence* before this Court (much less undisputed evidence) to meet their burden.

First, Defendants utterly fail to establish the existence of a "qualified educational loan." Such a qualified loan is one taken "solely to pay" for certain enumerated "qualified educational expenses" incurred by an "eligible student" for use at an "eligible educational institution." *See* 11 U.S.C. § 523(a)(8)(B); *See* 26 U.S.C. § 221(d)(1). As expressly recognized by the terms of the note, Plaintiff was no longer an "eligible student" during the post-graduation bar preparation course. Moreover, there is no serious question that the private Texas bar study loan here was not taken by Plaintiff "solely to pay" for the types of expenses -- such as tuition, room and board -- that constitute qualified educational expenses. *See* 26 U.S.C. § 221(d)(1); 20 U.S.C. § 1087ll. Nor is a post-law-school bar study course with BarBri such a qualified expense itself. *Id*. The private loan was taken out to fund a post-graduation and unnecessary private bar preparation course. The section 523(a)(8)(B) exception plainly does not apply here.

Moreover, Defendants have failed to show that the private Bar Study Loan was part of a "program" in 2008 and one "funded" at that time, at least in part, by a governmental unit or nonprofit institution. *See* 11 U.S.C. § 523(a)(8)(A). Surely any business such as Defendants would have detailed and clear records showing: (1) the existence of such a "program" in 2008; (2) a description of the types of loans within that program, presumably to include the type of private

1

Bar Study Loan that Plaintiff took; and (3) the specific "funding" for such a program, to include at least some governmental or nonprofit funding. But Defendants have placed no such specific evidence before this Court. And although Plaintiff sought such evidence in discovery, Defendants confirmed that they have no such relevant records from 2008.

Instead, Defendants proffer a single witness, Stephanie Box, who authenticates several "LAWLOANS" program documents from the 1989-1995 timeframe. (ECF 36.) These documents do not demonstrate any program in or around 2008, when Plaintiff took out the Bar Study Loan. Defendants suggest in their brief that the "LAWLOANS" program has funded private and government-backed loans continuously "since its inception." (ECF 35 at 3.) But neither Ms. Box, the sole defense witness here, nor the documents before this Court, say any such thing. And most obviously Ms. Box's declaration and the documents establish no "program" of any type in 2008, no program that specifically included Plaintiff's Bar Study Loan at the time it was given, and absolutely no "funding" for any such program at that time by any governmental unit or non-profit institution.

If such clear documents existed, it is difficult to understand why Defendants would not proffer them to this Court. But the inferences that Defendants seek to make from their 15-20 year *outdated* documents are too far-fetched. Importantly, some of the same documents suggest that a previous "LAWLOANS" program was substantially restructured in the 1990s, as discussed below, not that it continued with the same composition and funding into the 2000s. The connections that Defendants envision between the 1990s documents and Plaintiff's particular 2008 loan are simply too attenuated. At any rate, as this Court well knows, all inferences here must be made in favor of Plaintiff, who has no burden of proof in this motion.

At the end of day, Defendants proffer no documents or testimony which satisfies their burden of proving non-dischargeability. Defendants' motion must therefore be denied.

2

## II.  FACTUAL BACKGROUND AND PROCEDURAL POSTURE

Mr. Teran started law school at UC Hastings in August 2005.  As a first-generation college graduate, and the son of a single, working mother, he was excited by the opportunities that law school promised him.  (Declaration of Oscar D. Teran ("Teran Decl."), ¶ 2.)

On or about February 13, 2008, shortly before his graduation from law school, Mr. Teran obtained his Bar Study Loan from Sallie Mae Bank in order to pay for expenses associated with studying for the Texas bar examination.  (Teran Decl., ¶ 3; *see also* Declaration of Stephanie Box ("Box Decl."), ¶ 4, Ex. A.)  According to the promissory note, the bulk of the $15,000 loan was allocated to living expenses, with only a maximum of $4,000 allocable to bar review course fees. (Box Decl., ¶ 4, Ex. A (Section A.); *see also* Teran Decl., ¶ 3.)  The promissory note also shows that the loan would not be fully disbursed until after Mr. Teran graduated from law school (Box Decl., ¶ 4, Ex. A (Section A, showing an anticipated graduation date of 5/18/08, and the second disbursement date of 5/19/08).)  Mr. Teran graduated from law school on May 18, 2008, as scheduled.  (Teran Decl., ¶ 4.)

After his graduation, Mr. Teran used the funds from the note to pay for his BarBri study course in Texas, and for living expenses while he was preparing for the Texas bar exam.  (Teran Decl., ¶ 5-6, Ex. 1-2; *see also* Box Decl., ¶ 4, Ex. A (Section A, showing the Texas bar exam for 7/29/08).)  He took the Texas bar exam at the end of July 2008.  (*Id*., at ¶ 7.)

Unfortunately, Mr. Teran struggled financially in the subsequent years, as he attempted to use his legal aid salary to pay off credit card balances that accumulated while he was a student. (Teran Decl., ¶ 9.)  By May 10, 2010, Mr. Teran decided he was out of options financially, and he filed a petition for Chapter 7 bankruptcy in this Court.  (*In Re Oscar D. Teran*, Case No. 10-31718-DM (N.D. Cal.) ("Bankruptcy Case"), ECF 1; *see also* Teran Decl., ¶ 10.)  He listed the Bar Study Loan in Schedule F of his bankruptcy petition, in the amount of $15,752.00.  (*Id*., at 20 (Chela loan from 2/1/08).)  Although Defendants received notice of this bankruptcy petition, they did not file an adversary proceeding contesting the dischargeability of Bar Study Loan; nor did Mr. Teran

3

reaffirm the debt. (*See generally*, Bankruptcy Case.) Mr. Teran obtained his bankruptcy discharge on August 17, 2010. (Bankruptcy Case, ECF 11.) The Bar Study Loan was included in the discharge, and as discussed below, was not excepted from discharge as within the scope of section 523(a)(8).[1]

The Bar Study Loan was ultimately assigned to Defendant Navient Credit Finance Corporation, and has been serviced by Defendant Navient Solutions, LLC (collectively "Navient"). (*See* Answer, ¶¶ 9-10, 25, 36.) Defendants are large, sophisticated financial institutions. For example, as of December 31, 2020, Navient Corporation had approximately 5,560 regular employees, and earned annual net, after-tax income of $412 million.[2]

After Mr. Teran's discharge, Defendants continued to seek to collect the debt as if it had not been discharged. For example, they sent regular billing statements to Mr. Teran seeking payment, and they even reported the debt to the credit bureaus. (Teran Decl., ¶ 12.) As demanded by Defendants, Mr. Teran continued to make payments on the Bar Study Loan over a period of years, particularly because Navient has continued to place the debt on his credit report as an outstanding balance. (*Id*.)

The instant adversary proceeding was commenced by Mr. Teran, on behalf of himself and those similarly situated who have dischargeable Consumer Education Loans, on August 31, 2020. (ECF 1.) In his Complaint, Mr. Teran asserts a dischargeability cause of action under section 523(a)(8) of the Bankruptcy Code. (Compl., at ¶¶ 81-82.) He further seeks contempt sanctions and remedies for Defendants' conduct in continuing to collect payments on these discharged

---

[1] Although the class allegations in this case are not yet before the Court, the Plaintiff's Complaint alleges that Defendants have no objectively reasonable basis for concluding that loans such as the Bar Study Loan were nondischargeable. Yet, ever since the enactment of BAPCPA, they have consistently acted as if such loans survived the bankruptcy discharge. As a result, Defendants have collected enormous sums of money from bankruptcy debtors in the Northern District of California who have had their debts discharged in bankruptcy. (See Complaint, ¶¶ 11-23, 43-56, 77)

[2] Form 10-K, at 9 & 14, available at https://navient.com/Images/NAVI_2020_10-K_2-26-21_Final_tcm5-22675.pdf (last visited Nov. 4, 2021).

4

consumer debts. (*Id.*, at ¶¶ 73-80.) Finally, Mr. Teran also asserts a cause of action under the CCRAA for its credit reporting of the discharged Consumer Education Loans. (*Id.*, at ¶¶ 83-97.)

On July 30, 2021, Defendants filed the instant motion for summary judgment, asserting that the Bar Study Loan was nondischargeable under section 523(a)(8)(A)(i) & (a)(8)(B).

## III. <u>LEGAL STANDARD</u>

Defendants cannot meet the multiple burdens they have in their motion. Not only must Defendants show that the undisputed evidence entitles them to judgment as a matter of law, but they also bear the burden of proving that the Bar Study Loan falls within the scope of section 523(a)(8).

Under the well-known standard, summary judgment is only appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (incorporated by Fed. R. Bankr. P. 7056). The party moving for summary judgment bears the initial burden to establish there are no genuine issues of material fact to be decided at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). When the moving party bears the ultimate burden of proof at trial, then its summary judgment motion must be supported by evidence establishing the existence of each and every element essential to its case. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1315 (9th Cir. 1995), cert. denied, 516 U.S. 869, 116 S. Ct. 189, 133 L. Ed. 2d 126 (1995).

Defendants bear the ultimate burden of proof on the merits here. "Under § 523(a)(8), the lender has the initial burden to establish the existence of the debt and that the debt is an educational loan within the statute's parameters." *Roth v. Educ. Credit Mgmt. Corp.* (In re Roth), 490 B.R. 908, 916 (B.A.P. 9th Cir. 2013); *see also Kashikar v. Turnstile Capital Mgmt., LLC (In re Kashikar)*, 567 B.R. 160, 168 (B.A.P. 9th Cir. 2017) (creditor "will bear the burden of proving that § 523(a)(8) applied to the loan"); *In re Mehta*, 310 F.3d 308, 311 (3d Cir. 2002) (student loan creditor opposing discharge has burden of establishing that the obligation is an educational loan

5

under § 523(a)(8)); *In re Renshaw*, 222 F.3d 82, 86 (2d Cir. 2000) (same); *Holguin v. Nat'l Collegiate Student Loan Tr. 2006-2 (In re Holguin)*, 609 B.R. 878, 884 (Bankr. D.N.M. 2019) (same); *In re Rumer*, 469 B.R. 553, 561 (M.D. Pa. 2012) (initial burden on lender to establish existence of debt and to demonstrate it is within one of the categories of § 523(a)(8)); *In re Davis*, 316 B.R. 610 (Bankr. S.D.N.Y. 2004) (creditor did not meet burden of establishing existence of educational loan resulting from unpaid tuition). This burden remains with the creditor even when the debtor is the plaintiff in adversary. *See In re Dudley*, 502 B.R. 259, 271 (Bankr. W.D. Va. 2013) (creditor in 523(a)(8) action has burden to show debt excepted from discharge even in proceeding in which debtor is the plaintiff); *see also McDaniel v. Navient Sols. Inc. (In re McDaniel)*, 590 B.R. 537, 545 (Bankr. D. Colo. 2018).

Moreover, like other exceptions to discharge, the text of section 523 is to be construed narrowly in favor of the debtor. *In re Christoff*, 527 B.R. 624, 629 (B.A.P. 9th Cir. 2015) (discharge exceptions must be limited to those plainly expressed in Code, citing *Bullock v. BankChampaign*, 569 U.S. 267, 275 (2013)); *see also Hawkins v. Franchise Tax Bd. of Cal.*, 769 F.3d 662, 666 (9th Cir.2014) (reminding generally that "the Supreme Court has interpreted exceptions to the broad presumption of discharge narrowly"); *In re Chambers*, 348 F.3d 650, 654 (7th Cir. 2003) (definition of educational loan under § 523(a)(8), like other exceptions to discharge, is to be narrowly construed in favor of debtor); *In re Mehta*, 310 F.3d 308, 311 (3d Cir. 2002) (same); *In re Renshaw*, 222 F.3d 82, 86 (2d Cir. 2000) (scope of obligations under § 523(a)(8) to be narrowly construed); *Sachan v. Huh (In re Huh)*, 506 B.R. 257, 263 (9th Cir. BAP 2014) (en banc) ("the exception to discharge provisions of the Bankruptcy Code are interpreted strictly in favor of debtors"); *In re Davis*, 316 B.R. 610, 613 (Bankr. S.D.N.Y. 2004) (scope of student loan exception to discharge should be construed narrowly against creditor and in favor of debtor); *In re Johnson*, 222 B.R. 783, 786 (Bankr. E.D. Va. 1998) (exceptions to discharge should be narrowly construed; tuition and fees debt did not fall within any category of § 523(a)(8)); *In re Alibatya*, 178 B.R. 335, 338 (Bankr. E.D.N.Y. 1995) (student charges were not educational loan; scope of §

6

523(a)(8) should be strictly construed against creditor and liberally in favor of debtor); *In re Van Ess*, 186 B.R. 375, 377–78 (Bankr. D.N.J. 1994) (rule of narrow construction against creditor applies in determining whether transaction was educational loan under § 523(a)(8)).

## IV. <u>ARGUMENT</u>

Courts have repeatedly found that Defendants' consumer education loans, such as their bar study loans, fall outside the scope of section 523(a)(8) and are therefore dischargeable. *Crocker v. Navient Sols., L.L.C. (In re Crocker)*, 941 F.3d 206, 224 (5th Cir. 2019) (bar study loan); *McDaniel v. Navient Sols. LLC (In re McDaniel)*, 973 F.3d 1083, 1104 (10th Cir. 2020) (Tuition Answer Loan for amounts beyond the cost of attendance); *Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595, 600-601 (2d Cir. 2021) (same). In each of those cases, Navient's argument relied exclusively on the provision of section 523(a)(8)(A)(ii), which the Fifth Circuit described as "the only possibly applicable part of the relevant statute." *See Crocker*, 941 F.3d at 224. Faced with this negative authority, however, Defendants now abandon subparagraph (a)(8)(A)(ii) altogether and turn their focus to the other two, even more attenuated subsections for relief. But as their lack of evidence illustrates, they fare no better under these other two provisions.

### A. <u>Mr. Teran's Bar Study Loan Was Not a "Qualified Educational Loan"</u>

Navient's argument under section 523(a)(8)(B) is a non-starter. In *Crocker*, Navient conceded to the Fifth Circuit that its bar study loans were not "qualified education loans." *Crocker*, 941 F.3d at 222-23. In its motion here, Navient barely makes an effort to meet the criteria of that section.

In order for a loan to be considered a "qualified educational loan," it must meet the strict requirements of the Internal Revenue Code. *See* 11 U.S.C. § 523(a)(8)(B). Those requirements include *inter alia*, that the loan be taken "solely to pay" for certain enumerated "qualified higher education expenses" at an "eligible educational institution," 26 U.S.C. § 221(d)(1), "which are attributable to education furnished during a period during which the recipient was an eligible

7

student," 26 U.S.C. § 221(d)(1)(C). There is no serious question that these features are absent from the Bar Study Loan.

**"Eligible student."** Perhaps most clearly, the loan proceeds were not attributable to education furnished to Mr. Teran while he was an eligible student. An "eligible student" is one who (a) meets the requirements of the Higher Education Act – meaning, in relevant part, that he or she is enrolled in an eligible institution of higher education in a program leading to a "recognized educational credential," such as a degree, *see* 20 U.S.C. § 1091(a)(1); and (b) is carrying at least half the normal full-time work load for that course of study. 26 U.S.C. § 25A(b)(3) (incorporated by 26 U.S.C. § 221(d)(3)). The face of the note itself shows that this requirement is not met by the Bar Study Loan. As the note shows, Mr. Teran was to graduate law school, and earn his degree of Juris Doctor, on May 18, 2008. The second disbursement of the loan was to come *after* his graduation – on May 19, to be precise – to fund a test preparation course over the subsequent months so that he could sit for the Texas bar exam on July 29, 2008. (Box Decl., ¶ 4, Ex. A.) Because Mr. Teran had already graduated and was no longer working towards his degree while he was preparing for the bar exam, he was no longer an "eligible student." *See* 20 U.S.C. § 1091(a)(1). Defendants do not even suggest, let alone prove, otherwise.

**"Qualified Higher Education Expenses."** Second, the loan must be incurred "solely" to pay for certain enumerated "qualified higher education expenses." 26 U.S.C. § 221(d)(1). There is no serious question that the private Texas bar study loan here was not taken by Plaintiff "solely to pay" for the types of expenses -- such as tuition, room and board -- that constitute qualified higher education expenses. *See* 26 U.S.C. § 221(d)(1); 20 U.S.C. § 1087ll. Nor is a post-law-school bar study course such a qualified expense itself. *Id*.[3] The private loan was taken out to fund

---

[3] Even in the unlikely event Navient could shoehorn this unnecessary test preparation into a "qualified education expense," the Bar Study Loan would still fail this prong because the bulk of the loan was for "living expenses." Loans that fund some education expenses, as well as some other personal expenses, are not considered by the I.R.S. to be "qualified educational loans." *See* 26 C.F.R. § 1.221-1(e)(4) Example 6; *see also Wiley v. Wells Fargo Bank, N.A. (In re Wiley)*, 579 B.R. 1, 10 (Bankr. D. Me. 2017).

8

a post-graduation and unnecessary private bar preparation course. The section 523(a)(8)(B) exception plainly does not apply here.

**"Eligible educational institution."** Finally, the "qualified higher education expense" must be for the cost of attendance at an "eligible educational institution." 26 U.S.C. § 221(d)(2). An "eligible educational institution" is one that is described in the Higher Education Act ("HEA"), as it existed in 1997, and that is eligible to receive federal funds under the Title IV program. 26 U.S.C. § 25A(f)(2). As it existed in 1997, the HEA only covered certain types of schools, such as proprietary institutions of higher education, postsecondary vocational institutions, and community colleges. Higher Education Amendments of 1992, Pub. L. No. 102-325, § 481(a), 106 Stat. 448, 609 (1992). Needless to say, BarBri and other test preparing services do not fall within those definitions. Although Navient asserts that "the funds were to be used for a bar study course – *such as* the one offered by UC Hastings in 2008," (Def's MPA, at 10 (emphasis added),) the note does not require the funds to be used at an institution of higher education. In fact, despite Navient's speculations concerning UC Hastings' bar preparation activities, there is no evidence that any such courses were being offered over the summer – much less for an out-of-state bar exam. Mr. Teran, the only witness with first-hand knowledge of the matter, says otherwise. (*See* Teran Decl., ¶ 8.)

As a result, the Bar Study Loan is not a "qualified education loan," within the meaning of section 523(a)(8)(B).

### B. Mr. Teran's Bar Study Loan Was Not Made Under A Program Funded in Whole or in Part by the Government or a Nonprofit

It is undisputed that neither a government entity nor a nonprofit funded any part of the Bar Study Loan. Nevertheless, the crux of Defendants' motion is that, because the Bar Study Loan was a subpart of a larger program called "LAWLOANS," and other subparts of that program did receive such funding, then the exception of section 523(a)(8)(A)(i) applies. Not so.

"In general, any evidence presented in connection with § 523(a)(8) must be viewed with the Congressional intent that exceptions to discharge be narrowly construed against the creditor

9

and liberally in favor of the debtor in order to provide the debtor with comprehensive relief from the burden of his indebtedness. This principle applies equally to student loan exceptions to discharge." *Page v. JP Morgan Chase Bank (In re Page)*, 592 B.R. 334, 338 (B.A.P. 8th Cir. 2018). In *Page*, the Eighth Circuit Bankruptcy Appellate Panel overturned the bankruptcy court's determination that a loan fell within the scope of section 523(a)(8)(A)(i) based on "scanty" evidence of a nonprofit's involvement in the purported loan program. *Id*. at 339 ("TERI merely provided an address to which applications could be delivered, and that is not sufficient to support the inference that TERI "funded" this loan program.").

Similarly, other bankruptcy courts routinely find that creditors fail to meet their burden under section 523(a)(8) (a)(i) when they cannot introduce admissible evidence establishing nonprofit funding in a loan program. *See e.g.*, *Wiley v. Wells Fargo Bank, N.A. (In re Wiley)*, 579 B.R. 1, 6 (Bankr. D. Me. 2017) (creditor could not establish 523(a)(8)(A)(i) exception with assertions that "do not identify the program under which the Loans were extended, address the relationship between Wachovia and TERI, or otherwise show that TERI funded the program under which the Loans were made"); *In re Clouser*, No. 11-33104-tmb7, 2016 Bankr. LEXIS 3665, at *7 (Bankr. D. Or. Oct. 6, 2016) ("Aside from the language of the contract, NCSLT has introduced no evidence showing that the loan was made or guaranteed by a nonprofit or governmental agency"); *Seton Hall Univ. v. Van Ess (In re Van Ess)*, 186 B.R. 375, 380 (Bankr. D.N.J. 1994) (creditor could not prove existence of an actual "program"); *Palmer v. Galaxy Int'l Purchasing, LLC (In re Palmer)*, Nos. 12-51428, 15-05073, 2021 Bankr. LEXIS 834, at *20-32 (Bankr. N.D. Ohio Mar. 31, 2021) (creditor could not prove educational purpose); *Holguin v. Nat'l Collegiate Student Loan Tr. 2006-2 (In re Holguin)*, 609 B.R. 878, 887-88 (Bankr. D.N.M. 2019); *Santa Fe Med. Servs. v. Segal (In re Segal)*, 57 F.3d 342 (3d Cir. 1995) (creditor could prove neither an "educational debt" nor a "program").

Here, as in the above cases, Defendants' evidence of a qualified "program" is "scanty" at best.

### 1.  **Early LAWLOANS Documents From the 1980's and 1990's Do Not Establish a Covered Program in 2008**

In order to make its strained argument, Defendants first point to LAWLOANS formation documents to draw a comparison to the case of *In re Pilcher*, 149 B.R. 595 (B.A.P. 9th Cir. 1993). Notably, in this argument, Defendants use careful language to avoid asserting that this program structure from 1989 was still in place when Mr. Teran took out the Bar Study Loan in 2008.  But without proof of nonprofit participation in Mr. Teran's loan program in 2008, Defendants' argument falls flat.

The statutory text is clear in its application to a loan "made under any program funded in whole or in part by a governmental unit or nonprofit institution."  11 U.S.C. § 523(a)(8).  Under the plain reading of this text, the relevant time period for this analysis is the time the loan was made.  *Holguin v. Nat'l Collegiate Student Loan Tr. 2006-2 (In re Holguin)*, 609 B.R. 878, 887 (Bankr. D.N.M. 2019) ("the evidence now before the Court is insufficient to establish that the Guaranty Agreement was in effect at the time Plaintiff obtained the Loan").  In *Holguin*, a creditor similarly argued its loan was made under a "program funded in whole or in part by a… nonprofit institution," and pointed to an old guarantee agreement as evidence to that effect.  But the guarantee agreement "expired before the date Plaintiff obtained the Loan." *Id.*  As a result, the court reached the straightforward conclusion that "[i]f the Guaranty Agreement was not in effect at the time Plaintiff obtained her Loan, [the creditor] cannot established that the Loan was part of a loan program funded in part by a nonprofit institution."  *Id.*, at 888.  In other words, section 523(a)(8)(A)(i) does not protect loans made under programs *formerly* funded by nonprofit institutions.

Thus, the formation documents proffered by Navient, which relate to the program 15-20 years before the Bar Study Loan, are wholly irrelevant.  After all, loan programs and products change over time, and that is especially true of the student loan industry from the 1980s through the 2000s.

Defendants have not offered any evidence, much less undisputed documentary evidence, that the purported structure of the program from 1989 continued in existence through 2008. Nor could they, as their own documents show that the structure did change throughout those years. For example, although Defendants provide the LAWLOANS Multiparty Agreement dated July 31, 1989, *see* Box Decl., Ex. C, their own documents show that there was an entirely new Multiparty Agreement in March 10, 1995, *see* Box Decl., Ex. G (an amendment to the new March 10, 1995 Multiparty Agreement). Defendants have confirmed they do not have this March 10, 1995, Multiparty Agreement, which Plaintiff specifically requested along with other subsequent agreements through the time Mr. Teran took out the Bar Study Loan. (Declaration of Erika A. Heath ("Heath Decl."), ¶¶ 3-4, Ex. 3-4.) This tremendous gap in evidence – spanning over 13 years – is fatal to Defendants' assertion that the Bar Study Loan was part of a "program" funded in part by nonprofit institutions.

Other documents from Defendants show other changes to the LAWLOANS program over the next 13 years. ████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████ ████████████████████████████████████████████████████ ████████████████████████████████████████████████████████

(Heath Decl., ¶ 5, Ex. 5 at NAVTER0000905.) ████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████ (*Id.*, at ¶ 6, Ex. 6 at NAVTER0002294 ████████████████████████████████████ ████████████████████████████████████████████████████████████████████████

**[REDACTED]**

Notably missing from all these funding documents (all of which are more contemporaneous with the Bar Study Loan than Navient's evidence) is mention of any active involvement from a nonprofit organization in the LAWLOANS program by the time Mr. Teran took out the Bar Study Loan.

Defendants do not address these crucial changes to the LAWLOANS program, and apparently hope that they can rely on its historical structure to seek refuge behind *Pilcher*. But the structure and funding of the LAWLOANS Program was entirely different by 2008, when Mr. Teran took out the Bar Study Loan.

2. **Navient Cannot Prove the Federal Government Funds Any Part of the LAWLOANS Program, as Federal Programs are Distinct Programs Defined by Statute.**

Perhaps realizing that its key evidence is outdated, Navient also tries to assert that the LAWLOANS program was funded in part by a governmental unit by pointing to a single LAWLOANS brochure from the 2007-2008 period that happens to reference federal student loans.

Most fatal to Navient's argument is that it has failed to produce a single document showing that the federal government agreed to participate in, let alone finance, the LAWLOANS program. The federal government does not finance any kind of program with a simple wink and a nod, but it provides funding only with ample documentation. *See e.g.*, 20 U.S.C. § 1078(b) (discussing written agreements with the Department of Education to participate in its Stafford program). No such agreements concerning the government's participation in any kind of LAWLOANS program have been produced.

The records that have been produced indicate there was no federal funding of the LAWLOANS program. For example, **[REDACTED]**

**[REDACTED]**

13

(Heath Decl., ¶ 5, Ex. 5 at NAVTER0000834.)  Even the terms of the note underlying the Bar Study Loan make clear that federal loan programs are entirely different from LAWLOANS:

> Title IV of the Federal Higher Education Act of 1965, as amended (20 U.S.C. 1001 et seq.), provides borrowers with federal financial aid options to pay for or finance their higher education expenses. Usually, the terms of loans available under *these federal programs* are more advantageous to the borrower than the terms available under private loan programs.  Borrowers should therefore maximize their use of *these federal loan programs* before obtaining private loans.

(Box. Decl., Ex. A, at 6 (¶ 9) (emphasis added).)  After delineating the Bar Study Loan from any kind of federally funded loan, the note then goes on to describe those other federal programs, including Stafford loan programs.  (*See id.*, Ex. A, at 6 (¶ 9(c)-(d)).)  The note provides no suggestion whatsoever that those federal programs are somehow part of the LAWLOANS umbrella.

Navient's sole "evidence" of federal funding in the LAWLOANS program is a program brochure that is, at best, ambivalent about such funding.  Navient cites page 5 of the guide, which is titled "2007-2008 LAWLOANS® PROGRAM FEATURES."  Underneath that heading, the guide provides some general information about federal student loans.  But there is a key disclosure at the beginning of the brochure that makes clear that the federal loans discussed in the guide are not part of the LAWLOANS program:

> The purpose of the Quick Reference Guide is to provide an overview of the LAWLOANS® program featuring LAWLOANS Private Loan℠ and Bar Study Loan®.  *Additionally, the Guide provides general information regarding Federal Stafford and Federal Graduate PLUS Loans.*
> If a policy or procedure is not specifically defined for the LAWLOANS Private Loan, please follow the regulations for federal loans as defined by the Department of Education.

(Box Decl., Ex. B at 4 (emphasis added).)  Yet again, Navient's own disclosures in this brochure make clear that the LAWLOANS program features the "LAWLOANS Private Loan℠ and Bar Study Loan®," and that it is only providing "general information" about some federal student

14

loans which are not part of the LAWLOANS program. Thus, on its face, this one brochure is hardly evidence of a LAWLOANS program funded by the federal government; on the contrary, it specifically disclaims it. *See Clouser*, 2016 Bankr. LEXIS 3665, at *7 (Bankr. D. Or. Oct. 6, 2016) (a single reference to nonprofit involvement in a loan document was insufficient to prove it funded a program under section 523(a)(8)(A)(i)).

Moreover, Navient cannot unilaterally redefine federal loan programs as falling under the LAWLOANS umbrella for purposes of section 523 when federal law already carves them out as their own, independent programs. As relevant here, the "Robert T. Stafford Federal Student Loan Program" is defined in 20 U.S.C. § 1071(c), and federal PLUS Loans are described under 20 U.S.C. section 1078-2. Federal regulations make clear that Stafford Loans and PLUS Loans are both subparts of an umbrella program, but that umbrella program is the Federal Family Education Loan Program (FFEL or FFELP), not LAWLOANS. 34 C.F.R. § 682.100. Title IV and its implementing regulations go through exhaustive detail regarding the details of these loan programs. *See Chae v. SLM Corp.*, 593 F.3d 936, 944 (9th Cir. 2010) (describing the extensive breadth of the programs). In short, whatever the term "program" means under section 523(a)(8)(A)(i), Navient cannot assert that it means something different than a program defined by federal statute.[4]

Navient has not produced a single document showing the federal government's agreement to participate in the LAWLOANS program, and several documents seem to distance LAWLOANS from the existing federal programs. In the absence of any funding documents, Navient's attempt

---

[4] Indeed, bankruptcy courts have had no trouble looking to FFEL loans as being part of a "program" for purposes of section 523(a)(8). *See e.g.*, *Channer v. Pa. Higher Educ. Assistance Agency (In re Channer)*, 833 F. App'x 502, 505-06 (2d Cir. 2020) ("The record here shows that Channer's loans were obtained through the FFEL Program, a federally-funded program"); *Lewis v. Pa. Higher Educ. Assistance Agency*, No. 17-5317, 2018 U.S. App. LEXIS 1873, at *8 (6th Cir. Jan. 24, 2018) ("The FFEL program is a federal student loan program governed by the Higher Education Act of 1965.").

15

to use ambivalent language from a single brochure to recharacterize an entire federal program as a part of LAWLOANS falls flat.

**V.** **CONCLUSION**

Defendants are large, sophisticated financial institutions with thousands of employees and massive databanks. Yet they cannot proffer a single piece of evidence from 2008 to satisfy their burden. They ask this Court to make far-fetched inferences in their favor based on 15-20 year-old, outdated and general records, when the well-known legal standard requires this Court to make all inferences in Plaintiff's favor. Summary judgment for Defendants here is plainly not appropriate.

Respectfully submitted,

Dated:      November 5, 2021      **OSCAR D. TERAN**,
by his attorneys,

*/s/ Erika Heath*
Erika A. Heath
**FRANCIS MAILMAN SOUMILAS, P.C.**
369 Pine Street, Suite 410
San Francisco, CA 94104
Tel: 628-246-1352
Fax: 215-940-8000
eheath@consumerlawfirm.com

James Michel
**THE LAW OFFICE OF JAMES MICHEL**
2912 Diamond St #373
San Francisco, CA 94131-3208
Tel: (415) 239-4949
attyjmichel@gmail.com

**FRANCIS MAILMAN SOUMILAS, P.C.**
James A. Francis*
John Soumilas*
1600 Market Street, Suite 2510
Philadelphia, PA 19103
Tel: (215) 735-8600
Fax: (215) 940-8000
jfrancis@consumerlawfirm.com

16

jsoumilas@consumerlawfirm.com

*Admitted *Pro Hac Vice*

*Attorneys for Plaintiff and the Class*

17