Payam Khodadadi (SBN 239906)
McGuireWoods LLP
1800 Century Park East, 8th Floor
Los Angeles, CA 90067-1501
Telephone: 310.315.8208
Facsimile: 310.315.8210
Email: pkhodadadi@mcguirewoods.com

K. Elizabeth Sieg (admitted *pro hac vice*)
McGuireWoods LLP
Gateway Plaza
800 East Canal Street
Richmond, Virginia 23219
Telephone: 804.775.1000
Facsimile: 804.775.1061
bsieg@mcguirewoods.com

Joseph A. Florczak (admitted *pro hac vice*)
McGuireWoods LLP
77 W. Wacker Drive, Suite 4100
Chicago, IL 60601
Telephone: 312.849.8100
Facsimile: 312.849.3690
Email: jflorczak@mcguirewoods.com

*Counsel for Navient Solutions, LLC
and Navient Credit Finance Corporation*

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| IN RE: OSCAR D. TERAN, Debtor | Bankruptcy No. 10-31718<br>Chapter 7 |
| OSCAR D. TERAN, on behalf of himself and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>NAVIENT SOLUTIONS, LLC, NAVIENT CREDIT FINANCE CORPORATION,<br><br>Defendants. | Adversary No. 20-03075<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |

Defendants Navient Solutions, LLC and Navient Credit Finance Corporation (together, the "Defendants"), through the undersigned counsel, hereby submit this supplemental brief in support of Defendants' *Motion for Summary Judgment* (the "Motion") in response to the Court's order entered on December 3, 2021 (the "Order"). The Order provides that "the Court requests that the parties provide further briefing on the matter of *Michael Mader v. Experian Information Solutions, LLC*, Case No. 19-3787 (S.D.N.Y.), Docket Nos. 79, 88, and 128. The Court would prefer [the] parties to focus their attention to whether the *Mader* decisions are distinguishable from *In re Pilcher*, 149 B.R. 595 (BAP 9th Cir. 1993)."

## I. PRELIMINARY STATEMENT

Defendants submit that both the *Mader* and *Pilcher* decisions support granting the Motion. Both cases hold that a student loan, even if it is a private loan, is nondischargeable so long as that loan is made as part of a *program* that is funded or guaranteed in part by a nonprofit institution or government agency. In both cases, the student loans that the courts held were nondischargeable were private loans.

The only difference between the two cases is that the loan in *Pilcher* was not guaranteed by a nonprofit, whereas the loan in *Mader* was sponsored by a nonprofit (Nellie Mae). However, that made no difference to the *Mader* court in concluding the loan was nondischargeable. Specifically, the *Mader* court did not base its decision on the fact that the loan was sponsored by a nonprofit. Rather, the court held that the loan was nondischargeable because, like in *Pilcher*, it was made under a program that included other loans (such as Stafford Loans) that were guaranteed or funded by nonprofit entities or governmental units.

As such, the two decisions are not distinguishable from each other as they apply to the facts of this case.

## II. DISCUSSION

### A. The Mader Decision

*Mader* involved a private student loan that the court held was nondischargeable. There, the plaintiff – Mader – submitted an application and executed a promissory note to obtain a private loan from a predecessor of Navient in order to attend a theological seminary. *Mader* Docket No. 79 at 1.

The loan at issue was an EXCEL Grad Loan, which was sponsored by Nellie Mae, and was a part of a loan program that included Stafford loans, which are guaranteed or funded by nonprofits (including governmental units) under the Federal Family Education Loan Program. *Id.* at 1, 7.

After filing bankruptcy and receiving a discharge, Mader sued Experian Information Solutions, LLC ("Experian"), arguing that his credit report inaccurately listed his discharged loan as owing and delinquent. *Id.* at 4. Experian moved for summary judgment and the court granted the motion. *Id.* In granting Experian's motion, the court cited to other cases, including *Pilcher* (discussed in detail in the next section), as holding that "[§] 523(a)(8) does not require that [the nonprofit] fund [the plaintiff's] loan in order for that section to be applicable. Rather, § 523(a)(8) requires only that [the plaintiff's] loan 'was made under any program funded in whole or in part by' [a government unit or nonprofit institution]." *Id.* at 4-5. The court agreed with these other cases that "as long as a private loan is made under a program funded in part by a nonprofit or governmental unit, it is non-dischargeable under subsection 523(a)(8)(A)(i)." *Id.* at 5.

Of importance here, the *Mader* court did not base its decision on the fact that the Navient private loan was sponsored by Nellie Mae. *See id.* at 5-6. Rather, the court held that the Navient loan was nondischargeable because it was made "under a program that also makes Stafford Loans, which are guaranteed or funded by nonprofits (including governmental units) under the Federal Family Education Loan Program." *Id.* at 5.

Finally, the court found that Experian did not have to identify the program that made the Navient loan or the specific governmental unit or nonprofit that provided funding to the program because the law does not require such specificity. *Id.* at 7 and note 4; s*ee also* Docket No. 88 at 3. The court rejected all of Mader's remaining arguments. Docket No. 79 at 5-8.[1]

---

[1] The court also denied (i) Mader's motion for reconsideration principally because Mader did not identify any intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice; s*ee* Docket No. 88; and (ii) Mader's motion for an indicative ruling for failing to meet the standards set forth in Rules 60(b)(2) and (3) of the Federal Rules of Civil Procedure. *See* Docket No. 128.

### B. The Pilcher Decision

In *Pilcher*, similar to *Mader*, a lender made a private student loan to the debtor. The loan in *Pilcher* was originated under a Law Access program which, *inter alia*, provided educational loans for law students and coordinated the entities participating in the process of generating these loans. *In re Pilcher*, 149 B.R. at 595. That program provided law students with access to three loan types: The Guaranteed Student Loan and Supplemental Loans for Students, both of which were federally subsidized, and Law Access Loan which was a private loan that did not receive a federal subsidy. *Id.* at 599.

The debtor argued, among other things, that her particular loan, a Law Access Loan, was not excepted from discharge because the loan was not "made under any program funded . . . in part by . . . a non-profit institution." *Id.* at 597. The debtor further argued that the Law Access Loan was distinguishable from the other two (federal) programs which received nonprofit funding. *Id.* at 599. In support of her position, the debtor pointed to the fact that the brochure describing the loan program referred to the loans within the program as different "programs," not just loan types. *Id.* The debtor further asserted that while the same application could be used for all three loan types, the application required that separate sections be filled out for the different loans. *Id.* Further, a separate Supplemental Student Financial Application was required to obtain a Law Access Loan, which was not required for the other two types of loans. *Id.* Finally, the debtor argued that the Law Access Loan was not need based, but was credit based, and had private insurance while the other two loans were federally guaranteed. *Id.* at 599-600.

The Bankruptcy Appellate Panel ("BAP") rejected the debtor's arguments and held the private Law Access Loan was nondischargeable. *Id.* at 600. The BAP held that the bankruptcy court erroneously focused on whether the Law Access Loan was partially funded by a nonprofit institution. *Id.* at 598. The BAP explained that "the plain language of § 523(a)(8) indicates that it is the **program** that need be funded by a nonprofit institution." *Id.* (emphasis added).

The BAP reasoned that "Section 523(a)(8) does not define 'program,' but the use of the modifier 'any' suggests a broad definition." *Id.* The BAP further reasoned that "Congress did not use language indicating that the loan itself must be funded by a nonprofit institution, but that the

program pursuant to which the loan was made be funded in part by a nonprofit institution" and that "[n]othing in the legislative history surrounding this section evidences an intent to limit it solely to the funding of the loan itself. . . ." *Id.*

Because the "Law Access program, through which [the debtor] applied and received her loan . . . receive[d] nonprofit funding by the participation of nonprofit entities," the BAP concluded that "the loan that [the debtor] received was procured through the integrated services of the Law Access program, some of the participants of which are nonprofit institutions." *Id.* at 598-599. Accordingly, the BAP held that the overall educational loan program received nonprofit funding and thus the Law Access Loan was nondischargeable. *Id.* at 600. And the BAP emphasized that "§ 523(a)(8) does not require that the actual loan itself be funded by a nonprofit institution." *Id.*[2]

In sum, the BAP disagreed with the debtor's narrow reading of what constitutes the "program" for purposes of Section 523(a)(8) and held "that the ***entire*** Law Access program is the relevant program for purposes of § 523(a)(8)." *Id.* (emphasis added.) The BAP reasoned that the "loan was procured through the services of the entire Law Access Program, which includes all the services associated with, and integral to, the operation of the overall program, which made <u>all three</u> types of loans available to law students." *Id.* Since the "loan was obtained through the Law Access program" and the "Law Access program was partially funded by nonprofit institutions," the debtor's Law Access Loan was nondischargeable. *Id.*

C. *Mader* and *Pilcher* Are Not Distinguishable When Applied to the Facts Here

The *Mader* and *Pilcher* decisions are not distinguishable when viewed against the facts of this case. As discussed above, both courts held that a private student loan is nondischargeable so long as the loan is made as part of a program that is funded or guaranteed in part by a nonprofit institution.

---

[2] The BAP also held that there is no statutory basis for inquiry into whether the nonprofit participation was meaningful for the loan to be nondischargeable. *Id.* Specifically, the BAP explained that "the plain language of § 523(a)(8) states that funding may be 'in whole or in part.'" *Id.* "No qualifying language was included by Congress to establish minimum levels of participation. Therefore no inquiry into the meaningfulness of the participation is required." *Id.*

The only distinction between the two cases – a distinction not relevant here – is that the Law Access Loan was not sponsored by a nonprofit, whereas the EXCEL Grad Loan was sponsored by Nellie Mae, a nonprofit. That made no difference in the conclusions reached by the two courts or the analysis that each court undertook. In fact, in the *Mader* decision, the court did not even reference Nellie Mae as a part of the basis of its ruling.

As such, both decisions are aligned regarding the key issue in Defendants' Motion. The Law Access Loan excepted from discharge in *Pilcher* was a private loan that was part of a larger program that issued federally-subsidized loans. The EXCEL Grad Loan excepted from discharge in *Mader* was a private loan made under a larger program that also issued Stafford loans, which are guaranteed or funded by nonprofits and governmental units. And the LAWLOANS Bar Study loan at issue in this case is a private loan issued as part of a larger program that issued Stafford loans. Accordingly, Plaintiff's Bar Study loan should be excepted from discharge in bankruptcy absent a showing of undue hardship.

### D. *Pilcher* and *Mader* Support Defendants' Motion

Both the *Pilcher* and *Mader* decisions support the Court granting the Motion. As both *Pilcher* and *Mader* make clear, a privately-funded student loan, such as the loan at issue here, is nondischargeable when made as part of a program funded in part by a nonprofit or governmental unit.

Here, the LAWLOANS Program documents indisputably establish that it was a program funded in part by a governmental unit or nonprofit institution as specified in Section 523(a)(8)(A)(i). The terms of the LAWLOANS Multiparty Agreement reflect the involvement of non-profit entities in the administration of the program from the outset. *See* Ex. C to Box Declaration at 6. Further, that agreement lays out, in clear and unambiguous language, the essential structure of the LAWLOANS Program as an umbrella program, like in *Pilcher* and *Mader*, that encompassed both loans guaranteed by nonprofits or governmental units (*i.e,* Stafford loans) and private student loans. *Id.*

Similarly, the 2008 reference guide for the program confirms that the essential structure of

the program remained unchanged through 2008: *See* Ex. B to Stephanie Box Declaration at 5. Namely, the descriptions of this program contemporaneous to the issuance of Plaintiff's Bar Study loan confirm that the program continued to originate both loans guaranteed by nonprofits or governmental units (Stafford) loans and private loans. *See id.*

The foregoing evidence is clearly sufficient to show nondischargeability. In the words of the *Mader* decision, "Plaintiff . . . does not show that the law requires more specificity than Defendant offers." *See Mader* Docket No. 79, at 7.

Finally, the fact that Plaintiff may have used the funds advanced under this loan to pay for a private bar study course does not change the analysis. There is no dispute that the purpose of the loan was for the cost of attendance at UC Hastings. *See* Ex. A to Box Declaration at 4. Indeed, nowhere does the promissory note mention any bar review course. There is nothing in *Pilcher* or *Mader* to suggest the actual use by the borrower has any impact on the analysis of whether a loan is nondischargeable under Section 523(a)(8)(A)(i).

Accordingly, both the *Pilcher* and *Mader* decisions support granting the Motion.

## III. CONCLUSION

WHEREFORE, Defendants request that the Court grant the Motion.

Respectfully submitted,

Dated: December 14, 2021

/s/ Payam Khodadadi
Payam Khodadadi (SBN 239906)

K. Elizabeth Sieg (admitted *pro hac vice*)

Joseph A. Florczak (admitted *pro hac vice*)

*Counsel for Navient Solutions, LLC and Navient Credit Finance Corporation*

# CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2021, I electronically transmitted the foregoing document entitled **DEFENDANTS' SUPPLEMENTAL BRIEFING IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** to the Clerk's Office of the United States Bankruptcy Court, Northern District of California, using the Court's CM/ECF System for filing and service via transmittal of a Notice of Electronic Filing email from the Court to the registered email addresses of the interested parties in this case.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on December 14, 2021 at Los Angeles, California.

By:    /s/ Payam Khodadadi
            Payam Khodadadi